**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| John Lemos,<br><br>           Plaintiff,<br>     v.<br>Alderwoods Group, Inc.,<br><br>           Defendant. | 1:06-cv-01152-OWW-NEW<br><br>MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 18) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 19) |

## I. Introduction.

Before the court are cross-motions for summary judgment. Plaintiff, John Lemos ("Lemos"), moves for summary judgment on his first and only cause of action for declaratory relief under 28 U.S.C. § 2201(a). Lemos desires a judicial determination of his rights and a declaration that Defendant Alderwoods Group, Inc. ("Alderwoods"), is obligated to pay him $1,000 per month for life under an alleged oral agreement.

Alderwoods also moves for summary judgment on the grounds that no actual controversy exists between the parties, and the Court does not have jurisdiction to grant Lemos the declaratory relief he seeks. Alderwoods further argues that should the Court conclude jurisdiction exists, Lemos's motion for summary judgment must be denied because there are triable issues of fact regarding the alleged oral contract.

///

## II. Background.

### A. Procedural Background.

Lemos filed a complaint against Alderwoods on August 29, 2006, seeking declaratory relief that Alderwoods is obligated to pay Lemos $1,000 per month for the remainder of his life. Lemos invokes jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). Lemos alleges he is a citizen of California and Alderwoods is a citizen of Ohio, because it is incorporated there and has its principal place of business in Cincinnati. Lemos further alleges the amount in controversy exceeds $75,000 because he is sixty years old, Alderwoods is obligated to pay him $1,000 per month for the remainder of his life, and the present value of these payments exceeds $75,000.

Alderwoods filed its answer to Lemos's complaint on September 25, 2006. Alderwoods denies each allegation in Lemos's complaint, including the allegation that it is incorporated under the laws of Ohio. However, it has not asserted its state of incorporation or that its principal place of business is in California. Alderwoods also asserts numerous affirmative defenses including, among others, that Lemos's claim is not ripe and that no actual controversy exists under 28 U.S.C. § 2201.

On June 26, 2007, Lemos filed his motion for summary judgment. In connection with his summary judgment motion, Lemos filed a memorandum of points and authorities, a separate statement of undisputed facts, and the declaration of John Lemos. Alderwoods filed its opposition to Lemos's motion for summary judgment, and also filed objections to Lemos's evidence. Lemos did not file a reply brief.

On June 28, 2007, Alderwoods filed its cross-motion for summary judgment.  In connection with its summary judgment motion, Alderwoods filed a memorandum of points and authorities, a separate statement of undisputed facts, and the declaration of Douglas D. Routley.  On July 11, 2007, Lemos filed his opposition to Alderwoods's motion for summary judgment, and he also filed his response to Alderwoods's statement of undisputed facts along with additional facts in opposition to Alderwoods's motion for summary judgment, which are identical to the separate statement of undisputed facts he filed in connection with his own motion for summary judgment.  Approximately two weeks after Alderwoods filed its motion for summary judgment, it filed an identical separate statement of undisputed facts, a revised declaration of Douglas D. Routley, which included a new exhibit, the declaration of Christopher W. Taylor, and a modified version of its previous objections to Lemos's evidence, which provides space for the court to make its rulings on the evidentiary objections. Alderwoods filed a reply brief four days before the hearing date.

B.   **Factual Background**.

The facts are not numerous and are undisputed.[1]  Lemos was formerly employed by Whitehurst-Muller, Terry & Gremin ("Whitehurst-Muller"), until 1987, when he became ill and disabled.  (PSUF ¶ 1).  Lemos was diagnosed with HIV/AIDS and was not expected to live long.  (PSUF ¶ 3).  On or about February 6, 1989, Whitehurst-Muller and Lemos orally agreed that Lemos would

---

[1] Alderwoods did not file a response to Lemos's separate statement of undisputed facts.

3

not sue Whitehurst-Muller for employment-related torts and contract claims which existed at the time, and Whitehurst-Muller would pay Lemos $1,000 per month for the rest of his life.  (PSUF ¶¶ 2A and 2B).  Whitehurst-Muller paid Lemos $1,000 per month until it was sold to Alderwoods.  (PSUF ¶ 4).

Since it bought Whitehurst-Muller, Alderwoods has paid, and continues to pay, Lemos $1,000 per month.  (PSUF ¶ 5).  In a letter dated April 22, 2004, Alderwoods confirmed its obligation, acknowledging that it had been "paying Mr. Lemos $1,000 per month for life under the terms of a long-term disability agreement." (PSUF ¶ 6).

During the summer of 2006, there was a public announcement that Alderwoods would be sold to Service Corporation International ("Service International").  (PSUF ¶ 7).  When the agreement between Alderwoods and Service International was announced, Kim Anthony, a representative of Alderwoods, called Lemos and told him that once escrow closed on the sale, which was expected to be in September or October 2006, Alderwoods would cease making payments to Lemos under the contract.  (PSUF ¶ 8). Kim Anthony told Lemos that the sale was going forward and "why should the new company pay[,]" and that once Service International took over, the payments would stop completely. (PSUF ¶ 8).  Escrow closed on the sale of Alderwoods on November 29, 2006.  (DSUF ¶ 1).

Alderwoods continues to pay Lemos $1,000 per month, even after escrow closed on the sale of Alderwoods to Service International.  (PSUF ¶ 9 and DSUF ¶ 2).  Alderwoods, however, has not formally acknowledged to Lemos that it will continue to

4

make payments to him for the remainder of his life, or that Service International will make payments to him for the rest of his life. (PSUF ¶ 9). Alderwoods asserts it does not contemplate stopping payments to Lemos of $1,000 per month. (DSUF ¶ 3).[2]

### III. Legal Standard.

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.* A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782

---

[2] In his response to Alderwoods separate statement of undisputed facts (Doc. 20), Lemos admits that Alderwoods does not contemplate stopping monthly payments. (Doc. 22-2). The declarations of Douglas D. Routley (Doc. 21 at ¶ 4 and Doc. 26 at ¶ 5), Alderwoods's Vice President of Administrative Services, states that "Alderwoods Group, Inc. does not contemplate stopping the monthly payments to Lemos."

1  (quoting *Anderson*, 477 U.S. at 248).

2  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment.  *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

### IV. Discussion.

Lemos and Alderwoods dispute whether declaratory relief is proper in this case.  Lemos also contends that the contract satisfies the statute of frauds as it has been executed by performance and has been acknowledged orally and in writing by the defendant.  Alderwoods argues that should the court accept

6

jurisdiction of the action, Lemos's motion must still be denied due to triable issues of fact.  Alderwoods also objects to three statements from the Declaration of John Lemos, arguing that they lack foundation, assume facts not in evidence, and are inadmissible hearsay.

    A.    <u>Whether Declaratory Relief is Proper</u>.

Lemos contends that declaratory relief under 28 U.S.C. § 2201(a) is proper because it permits adjudication of a party's rights and obligations, including the right to terminate a contract, on a matter in dispute regardless of whether a claim for damages or injunctive relief have yet arisen.  According to Lemos, the actual controversy in this case is that Alderwoods refuses to formally acknowledge that it is obligated to continue to pay Lemos $1,000 per month for the rest of his life and has fully represented it is not obligated to do so.

Alderwoods rejoins that declaratory relief is not proper at this time because no actual controversy exists between the parties under Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("The Act"). Alderwoods claims that no direct or immediate harm exists because it continues to make monthly payments to Lemos, even after the sale to Service International, and it has no intention of ceasing payments.

The Act authorizes federal courts to declare the rights and other legal relations of parties when an actual controversy exists.  Specifically, the Act provides

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the

7

>    rights and other legal relations of any interested
>    party seeking such declaration, whether or not further
>    relief is or could be sought. Any such declaration
>    shall have the force and effect of a final judgment or
>    decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

It is well-settled that the Act's "actual controversy" requirement is the same as the case or controversy requirement of Article III of the United States Constitution. *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)). The Act requires no more stringent showing of justiciability than the Constitution does. *Societe de Conditionnement*, 655 F.2d at 942. Issuing a judgment in a case without an actual controversy is an advisory opinion, which is prohibited by Article III of the United States Constitution. *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990).

Concrete legal issues, rather than abstractions, are required for adjudication of constitutional issues. *Id*. Where the alleged controversy is hypothetical, federal courts do not have the authority to grant declaratory relief. *Sellers v. Regents of the University of California*, 432 F.2d 493, 500 (9th Cir. 1970).

>    A "controversy" in this sense must be one that is
>    appropriate for judicial determination . . . . A
>    justiciable controversy is thus distinguished from a
>    difference or dispute of a hypothetical or abstract
>    character; from one that is academic or moot . . . .
>    The controversy must be definite and concrete, touching
>    the legal relations of parties having adverse legal
>    interests . . . . It must be a real and substantial
>    controversy admitting of specific relief through a
>    decree of a conclusive character, as distinguished from
>    an opinion advising what the law would be upon a
>    hypothetical state of facts . . . .

8

*Aetna*, 300 U.S. at 240-41 (citations omitted).  "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

In a case involving a plaintiff who sought declaratory judgment to resolve a dispute over terms of a lease agreement, the Ninth Circuit held that the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard: "whether 'there is substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment.'" *Principal Life*, 394 F.3d at 671 (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The Ninth Circuit found that the contract dispute involved parties whose interests were clearly adverse, and that a decision would have financial consequence to both parties. *Id*. The dispute was sufficiently immediate to warrant the issuance of a declaratory judgment which made the case ripe. *Id*. at 672.

Here, the facts are undisputed.  The contract disagreement between Lemos and Alderwoods is definite and concrete.  It is undisputed that Lemos has been receiving $1,000 per month from Alderwoods (and before, from Whitehurst-Muller) continuously since 1989, for 18 years, and that Lemos continues to receive monthly payments even after the closing of the escrow of the Service International-Alderwoods sale.  According to the Declaration of Douglas D. Routley, Alderwoods's Vice President of Administrative Services, since the Alderwoods-Service

1  International sale closed escrow in November of 2006, Alderwoods
2  has continued to pay Lemos on a monthly basis and does not
3  contemplate ceasing the payments.  Lemos admits each of these
4  material facts in his response to Alderwoods's separate statement
5  of undisputed facts.  He also declares that Kim Anthony of
6  Alderwoods told him that Service International would not pay
7  Lemos and there was no reason to do so.
8       However, the parties to the dispute clearly have adverse
9  legal interests.  Legal uncertainty exists as to whether
10 Alderwoods, or Service International, will continue to honor the
11 agreement and make the payments to Lemos for the rest of his
12 life.  Such uncertainty is not hypothetical or abstract.  A
13 decision of the controversy will have immediate financial
14 consequence to both parties, binding Alderwoods or Service
15 International to honor the agreement and giving Lemos the
16 assurance that he will continue to receive payments for the rest
17 of his life.  *See Principal Life*, 394 F.3d at 671.  Whether Kim
18 Anthony contacted Lemos and told him that his payments would
19 cease is in dispute.  Her authority, agency, or employment
20 relationship has not been established.  There exists an immediate
21 and actual dispute that is ripe for resolution by declaratory
22 judgment.  There is a justiciable controversy.  Even though the
23 payments continue, Alderwoods could cease payments at any time.
24 Given that the alleged controversy is real and substantial and
25 that the case is ripe, declaratory relief is proper.  *See Aetna*
26 *Life*, 300 U.S. at 240-41.
27      B.   <u>Whether the Contract Satisfies the Statute of Frauds</u>.
28      Lemos argues that the contract satisfies the statute of

10

frauds because the contract could have been completed within a year. Alderwoods does not contest the issue.

Under California Civil Code § 1622, "[a]ll contracts may be oral, except such as are specially required by statute to be in writing." The statute of frauds requires a written agreement if such agreement "by its terms is not to be performed within a year from the making thereof." Cal. Civ. Code § 1624(a)(1). If, however, a condition terminating a contract may happen within one year of the making of the oral contract, the contract does not fall under the statute of frauds because the contract could be performed within a year. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 673 (1988). Even though performance of a contract could extend for longer than one year if the condition does not occur, the contract will not fall under the statute of frauds. *Id.* The death of a party or other contingencies qualifies as a condition terminating a contract, and if a contract might be fully performed within a year by the death of a party, then the statute of frauds does not apply. *Kelly-Springfield Tire Co. v. Bobo*, 4 F.2d 71 (9th Cir. 1925).

Furthermore, the statute of frauds is subject to an exception of partial performance of contract terms. *Grant v. Long*, 33 Cal. App. 2d 725, 742 (Cal. Ct. App. 1939). In order for a contract to be taken out of the operation of the statute of frauds, "the acts relied upon as establishing part performance must be unequivocally referable to the contract." *Schick Service, Inc. v. Jones*, 173 F.2d 969, 977 (9th Cir. 1949).

The contract at issue does not fall within the statute of frauds. Even though the agreement was oral, the contract was

11

based on Lemos remaining alive.  Lemos could have passed away within a year of the making of the contract, especially since he was diagnosed with HIV/AIDS.  Thus, the possibility of performance within one year takes the oral agreement between Lemos and Alderwoods's predecessor outside the statute of frauds.

Furthermore, there is partial performance on the contract. Since Alderwoods bought Whitehurst-Muller, Alderwoods has paid and continues to pay $1,000 per month to Lemos.  Such payments are unequivocally referable to the contract.  Therefore, the contract is not governed by the statute of frauds due to the possibility of performance within one year and partial performance.

    C.    <u>Whether Triable Issues of Fact Exist</u>.

Alderwoods contends that should the Court find it has jurisdiction, Lemos's motion for summary judgment must be denied because triable issues of fact exist.  Specifically, Alderwoods asserts that it has consistently characterized Lemos's monthly payments as long-term disability payments.  Lemos, on the other hand, alleges in his complaint that the monthly payments are payments for not suing his former employer for employment related torts and contract claims.

Alderwoods insists that the characterization of the monthly payments as either for (1) settlement of employment related torts and contract claims or (2) long-term disability is a critical distinction for determining the rights and obligations of the parties and what law governs the agreement.  Alderwoods asserts that an agreement for long-term disability payments falls within the purview of ERISA and its exclusive remedies, while an

12

agreement that is a settlement for tort claims does not.

Neither party has provided specific facts that describe the underlying circumstances by which Lemos and his former employer orally agreed he would be entitled to receive monthly payments of $1,000 per month for the remainder of his life. Without more than a conclusory assertion that Lemos's former employer would pay him $1,000 per month for the remainder of his life if he did not sue for employment related torts or contract claims, the enforceability of the alleged contract cannot be determined as a matter of law.

D.  **Alderwoods's Objections to the Declaration of John Lemos**.

Alderwoods raises three objections to the Declaration of John Lemos. First, Alderwoods objects to Lemos's characterization of the contract. Second, Alderwoods objects to Lemos's statement about a written letter, which characterized the contract as an "obligation." Third, Alderwoods objects to Lemos's statement that a phone call took place or that Kim Anthony stated that Lemos's payments would cease.

1.  **Objection No. 1: Characterization of the Contract**

Alderwoods objects to the following statement made by Lemos at ¶3 of his declaration:

On or about February 6, 1989, Whitehurst-Muller and I orally agreed: (A.) That I would not sue Whitehurst-Muller for employment related torts and contract claims which existed at that time; and (B.) Whitehurst-Muller would pay me $1,000 per month for the rest of my life.

Alderwoods contends that the statement lacks foundation, assumes facts not in evidence, and is inadmissible hearsay. Alderwoods also contends that there is no admissible evidence the

13

alleged contract resulted from Lemos agreeing not to sue for employment-related tort and contract claims.

Lemos's statement does not lack foundation because he is a party to the alleged oral agreement and has personal knowledge of its alleged underlying terms. The statement also is not hearsay to the extent it establishes that an agreement between the parties exist. *See* Fed. R. Evid. 801(c). These objections are overruled.

### 2. Objection No. 2: Written Letter

Alderwoods objects to the following statement made by Lemos at ¶7 of his declaration:

By letter dated April 22, 2004, a copy of which was sent to me and a true and correct copy of which is attached hereto as Exhibit 1, Alderwoods confirmed in writing its obligation to pay me $1,000 per month.

Alderwoods contends that the statement lacks foundation, assumes facts not in evidence, and is inadmissible hearsay. Alderwoods also contends that there is no admissible evidence that Alderwoods was obligated to pay Lemos for his long-term disability.

Lemos's statement does not lack foundation because he has personal knowledge of the $1,000 per month obligation was confirmed by a letter written on July 13, 2007, by Douglas D. Routley, Alderwoods's Vice President of Administrative Services. The written letter is an admission of a party-opponent, a statement by a person authorized by Alderwoods to make such a statement about the subject. See Fed. R. Evid. 801(d)(2). The statement is not hearsay and the objections are overruled.

///

### 3. Objection No. 3: Phone Call

Alderwoods objects to the following statement made by Lemos at ¶9 of his declaration:

On or about July 11, 2006, a representative of Alderwoods named Kim Anthony telephoned me and told me that once escrow closed on the sale from Alderwoods to Service Corporation International, which escrow closure was expected to in September or October 2006, Alderwoods would cease making payments to me under the contract. Ms. Anthony told me that sale was going forward and "why should the new company pay" and that payments would stop completely when Service Corporation International took over.

Alderwoods contends that the statement lacks foundation, assumes facts not in evidence, and is inadmissible hearsay. Alderwoods also contends that there is no admissible evidence that the alleged telephone call took place or that Kim Anthony stated Jon Lemos' "long-term disability payments would cease."

Federal Rule of Evidence 801(d)(2) makes a statement a non-hearsay admission if it is "(C) . . . by a person authorized by the party to make a statement concerning the subject, or (D) . . . by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority or the agency or employment relationship and the scope thereof. *Id*. In the Ninth Circuit, the proponent of the evidence "bears the burden of establishing a foundation from which to conclude that the statement was within a hearsay exclusion." *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir. 2002).

The contents of the statement at issue do not adequately establish a foundation for concluding that the statements were

15

1  either authorized by Alderwoods, Fed. R. Evid. 801(d)(2)(C), or
2  made by Alderwoods' agent relating to a matter within the scope
3  of the agency or employment, Fed. R. Evid. 801(d)(2)(D).  Lemos
4  has not established a foundation from which to conclude that the
5  phone call by Kim Anthony was made because he recognized her
6  voice or that Kim Anthony had the authority or the agency or
7  employment relationship to make such statements.  *See L.A. News*
8  *Serv.*, 305 F.3d at 935.  Therefore, the portions of Lemos's
9  declaration describing his call to Kim Anthony are inadmissible
10 at present and the objection is sustained.

## V.  Conclusion.

There exists an actual case or controversy between the parties, which warrants declaratory relief.  Lemos's motion for summary judgment is DENIED.  Alderwoods's cross-motion for summary judgment is DENIED, based on material issues of disputed fact whether Alderwoods or Service International will continue to honor the life payment contract.

Counsel for plaintiff should submit a form of order consistent with the claims within five business days after service of the decision by the clerk.

**IT IS SO ORDERED.**

**Dated:    August 3, 2007**              /s/ Oliver W. Wanger
                                        **UNITED STATES DISTRICT JUDGE**